# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| | : | |
| JEROME RIDDICK, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 3:16-cv-2009 (SRU) |
| | : | |
| KATHY MAURER, et al., | : | |
| Defendants. | : | |
| | : | |

## INITIAL REVIEW ORDER

Jerome Riddick, currently confined at Northern Correctional Institution in Somers, Connecticut, filed this case *pro se* under 42 U.S.C. § 1983.  Riddick alleges that the defendants have been deliberately indifferent to his serious medical needs.  Riddick names as defendants Director of Health Services Kathy Maurer, former Warden Edward Maldonado, Warden William Mulligan, Health Services Administrator Brien Libel, Dr. Carson Wright, Nurse Vikki Scruggs, Nurse Barbra Savoie and Nurse Ellen Durko.[1]  The complaint was filed on December 8, 2016.  Riddick's motion to proceed *in forma pauperis* was granted on December 15, 2016.

Under section 1915A of Title 28 of the United States Code, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant

---

[1] Within the body of the complaint, Riddick lists Commissioner Scott Semple as a defendant.  Because Commissioner Semple is not included in the case caption, he is not considered a defendant in this case.  *See* Fed. R. Civ. P. 10(a) ("[t]he title of the complaint must name all the parties").

who is immune from such relief.  28 U.S.C. § 1915A.  Although detailed allegations are not

required, the complaint must include sufficient facts to afford the defendants fair notice of the

claims and the grounds upon which they are based and to demonstrate a plausible claim to relief.

*Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007).  Conclusory allegations are not

sufficient.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The plaintiff must plead "enough facts

to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  Nevertheless, it

is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise

the strongest arguments that they suggest.'"  *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir.

2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also*

*Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude

for *pro se* litigants).

I.    Allegations

On January 22, 2016, Riddick was diagnosed with degenerative disc and joint disease in

his neck and shoulders.  He also was diagnosed with "curvilinear 1.5 cm metal density overlies

the medial superior scapula spine" in both shoulders and "linear 1.2 cm metal density to the left

manubrium sternum."  ECF No. 1, ¶ 11.  On August 19, 2016, Riddick was diagnosed with a

serious hip issue, and on November 8, 2016, with sciatic nerve syndrome.  In addition, Riddick

has been diagnosed with myopia and astigmatism in both eyes with his right eye deteriorating

faster than his left.

As a result of these conditions, Riddick experiences severe pain in three parts of his spine

every day; muscle spasms, numbness, tingling and pain in his left shoulder frequently throughout

the day; muscle spasms, tingling and pain in his left hip, left lower back and left knee frequently

throughout the day; a combination of sharp, stabbing and throbbing pains that travel down his left arm and left leg including his hand and foot frequently throughout each day; and multiple pinched nerves in his neck and shoulder area that cause extreme pain and limited mobility several times per month.  Riddick's pain causes him limited mobility and he can no longer see from his right eye.  Although Riddick has been prescribed glasses, he cannot wear them because the strain to his right eye causes him to experience "painful knife-like slices" to his eye.  Id., ¶ 23.  In addition, the glasses dull and narrow his vision and make objects appear smaller than they are.

Riddick cannot see a doctor without first seeing a nurse.  Defendants Nurses Scruggs, Savoie and Durko have been delaying his scheduled appointments.  Defendants Maurer, Libel and Wright have denied Riddick an MRI to diagnose his neck, back, hip, shoulder, arm, leg, and neurological or neuromuscular pain.  Defendants Libel, Wright, Scruggs, Savoie and Durko have delayed neck, back, shoulder and hip x-rays for weeks and months.  They also have delayed Riddick's ability to have x-rays taken of his spine.  Defendants Maurer, Libel and Wright have denied and delayed corrective eye surgery.

On March 28, 2016, and May 23, 2016, defendants Maldonado and Mulligan denied Riddick a proper mattress.  Since his arrival at Northern Correctional Institution, Riddick has had a worn, thin and torn mattress.  The mattress is so thin that Riddick feels as if he is lying on the metal bed without any mattress.  Defendants Maldonado and Mulligan state that there is no evidence that the mattress did not meet proper standards when it was issued to Riddick.  Although the mattress exacerbated Riddick's neck, back, hip and shoulder conditions and causes him to experience muscle spasms and pinched nerves, defendants Wright, Scruggs, Savoie and

3

Durko tell Riddick that mattress issues are a custody concern and that the medical unit does not provide medical mattresses.

All of the defendants were provided Riddick's medical records upon admission and, thus, were aware of his medical needs. Defendants Maurer, Libel, Wright, Scruggs, Savoie and Durko know that x-rays will not show neurological or neuromuscular conditions, and that an MRI is required for proper diagnosis. All defendants were aware that a flat mattress would exacerbate Riddick's medical conditions. Defendants Maurer, Libel and Wright know that Riddick's eyes will continue to deteriorate unless he is provided surgery.

II.   <u>Analysis</u>

Riddick contends that the defendants have been deliberately indifferent to his serious medical needs. In addition to damages and permanent injunctive relief, Riddick has filed a motion for temporary restraining order and preliminary injunction seeking an x-ray, MRI, and a medical mattress or adequate mattress. In his supporting memorandum, Riddick also seeks eye surgery. Thus, he seeks all of the injunctive relief requested in the complaint through this motion.

To state a claim for deliberate indifference to a serious medical need, Riddick must show both that his medical need was serious and that the defendants acted with a sufficiently culpable state of mind. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing *Estelle v. Gamble*, 492 U.S. 97, 104 (1976)). There are both objective and subjective components to the deliberate indifference standard. *See Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). Objectively, the alleged deprivation must be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The condition must produce death, degeneration or extreme pain. *See*

4

*Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).  Subjectively, the defendants must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of his actions or inactions.  *See Salahuddin v. Goord*, 467 F.3d 262, 279-80 (2d Cir. 2006). Negligence that would support a claim for medical malpractice does not rise to the level of deliberate indifference and is not cognizable under section 1983.  *See id.*  Nor does a difference of opinion regarding what constitutes an appropriate response and treatment constitute deliberate indifference.  *See Ventura v. Sinha*, 379 F. App'x 1, 2-3 (2d Cir. 2010); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).  Although a disagreement over treatment is not cognizable under section 1983, the treatment actually given must be adequate.  *See Chance*, 143 F.3d at 703.

Complaints of severe back pain and degenerative vision can constitute serious medical needs.  *See, e.g.*, *Guarneri v. Hazzard*, 2008 WL 552872, at *6 (W.D.N.Y. Feb. 27, 2008) ("[s]evere back pain, especially if lasting an extended period of time, can amount to a serious medical need under the Eighth Amendment"); *Faraday v, Lantz*, 2005 WL 3465846, at *5 (D. Conn. Dec. 12, 2005) (lower back pain caused by herniated discs and sciatica constitute a serious medical need); *Davidson v. Scully*, 155 F. Supp. 2d 77, 87 (S.D.N.Y. 2001) (noting that where vision will degenerate in the absence of corrective glasses, need for vision correction can be a serious medical need).  Thus, Riddick has alleged facts to support the objective component of the deliberate indifference test at this stage of litigation.

Riddick alleges that the defendants have denied him appropriate treatment for his various medical conditions.  Riddick fails to allege what treatment is being provided for his various conditions.  Riddick has attached to his complaint a November 23, 2016 letter and a November inmate request stating that following examination in September 2016, an optometrist determined

5

that Riddick's vision was correctable to 20/70 with conventional eyeglasses and that no corrective surgery was required. ECF No. 1-1 at 24, 25. There is no reference to Riddick's allegations of severe pain while wearing glasses. Riddick also has provided copies of inmate requests showing that he has been seen by the medical department for his complaints of pain. ECF No. 1-1 at 36, 38, 47. His request for an MRI was considered and denied by a doctor on October 4, 2016. ECF No. 1-1 at 34.

It appears from the documents Riddick provides that his claims constitute only a disagreement over treatment. However, because he includes allegations of severe pain which do not appear to be addressed in the documents provided, I will permit the claims to proceed at this time.

III.   Conclusion

Riddick's claims for deliberate indifference to serious medical needs will proceed against all defendants at this time. The defendants shall respond to the complaint and Riddick's motion for preliminary injunctive relief in accordance with the schedule below.

It is hereby ordered that:

(1)   **The Clerk shall** verify the current work addresses for each defendant with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet containing the Complaint and Motion for Temporary Restraining Order/Preliminary Injunction to each defendant at the confirmed address within **twenty-one (21) days** of this Order, and report to the court on the status of the waiver request on the thirty-fifth (35) day after mailing. If any defendant fails to return the waiver request, the Clerk shall make arrangements

6

for in-person service by the U.S. Marshals Service and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2)      **The Clerk shall** prepare a summons form and send an official capacity service packet to the U.S. Marshals Service.  The U.S. Marshal is directed to effect service of the amended complaint on the defendants in their official capacities at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, within **twenty-one (21) days** from the date of this order and to file a return of service within thirty (30) days from the date of this order.

(3)      **The Clerk shall** send written notice to Riddick of the status of this action, along with a copy of this Order.

(4)      **The Clerk shall** send a courtesy copy of the Complaint, the Motion for Temporary Restraining Order/Preliminary Injunction and this Ruling and Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(5)      The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent.  If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above.  They also may include any and all additional defenses permitted by the Federal Rules.

(6)      Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order.  Discovery requests need not be filed with the court.

(7)      All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(8)    Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed.  If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9)    If the Riddick changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that the plaintiff MUST notify the court.  Failure to do so can result in the dismissal of the case.  Riddick must give notice of a new address even if he is, or becomes, incarcerated.  Riddick should write PLEASE NOTE MY NEW ADDRESS on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If Riddick has more than one pending case, he should indicate all of the case numbers in the notification of change of address.  Riddick should also notify the defendant or the attorney for the defendant of his new address.

(10)    Riddick shall utilize the Prisoner Efiling Program when filing documents in this case.

(11)    The defendants shall file their response to Riddick's Motion for Temporary Restraining Order/Preliminary Injunction [ECF No. 8] within **sixty (60) days** from the date of this order.

    **SO ORDERED** this 22nd day of December 2016 at Bridgeport, Connecticut.

                                         /s/STEFAN R. UNDERHILL
                                         Stefan R. Underhill
                                         United States District Judge